UNITED STATES DISTRICT COURT
EASTERN DISTRICT OFNEW YORK
------------------------------------------------------------X

WESLEY MARTIN,

Plaintiff, CV-08-4548 (ADS) (WDW)

-against-

COUNTY OF NASSAU, POLICE DETECTIVE CHARLES DECARO, in his professional and Individual capacities, POLICE COMMISSIONER LAWRENCE W. MULVEY, in his professional Capacity, POLICE FIRST DEPUTY COMMISSIONER ROBERT MCGUIGAN, in his professional capacity, POLICE ASSISTANT COMISSIONER DENIS MONETTE, in her professional capacity, POLICE CHIEF OF DEPARTMENT ANTHONY ROCCO, In his professional capacity, POLICE CHIEF OF DETECTIVES PATRICK O'CONNOR and NASSAU COUNTY PROSECUTOR,

Defendants.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT PURSUANT TO RULE 12(c ) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Jacqueline Hollander, Esq.

## PRELIMINARY STATEMENT

Plaintiff, Wesley Martin, opposes the Fed R. Civ Pro Rule 12 (b)(6) and 12(c ) motion to dismiss the Complaint on the basis of the pleadings. Plaintiff is an individual beset by emotional and psychological problems, who requires daily medication to control these problems and exist day to day and hold down remunerative employment. Plaintiff was arrested without a warrant and apprehended outside his abode and hand-cuffed and brought to the police station and held for a period longer than 24 hours until he signed a confession.

Defendants appended exhibits to their Answer, and their Exhibit 2-M reveals that the confession was excluded by Hon. William O'Brien upon a Huntley hearing (People v. Huntley, *255* N.Y.S. 2d 838 (1965)), forcing the People and the defendants to drop to the entire prosecution against plaintiff. The complaint against the Defendants has followed.

## STANDARD OF REVIEW

The standard for addressing a Rule 12(b)(6) dismissal motion pursuant to 42 U.S.C. § 1983 claims is not whether the plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (on motion to dismiss for failure to state claim, pleadings are liberally construed with all reasonable inferences viewed in light most favorable to plaintiff).

A court deciding a R12(b)(6) motion generally may not consider material beyond the four corners of the complaint in determining the truth of the allegation of the complaint. Carey v. Mt. Desert Island Hosp., 910 F.Supp. 7, 9 (D. Me. 1995). If a party presents matters outside the complaint, the court must convert the motion to dismiss into a summary judgment motion. Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 177 (1st Cir. 1997) (motion must be

converted to summary judgment motion if trial court actually took congnizance of supplementary materials).

To defeat a properly made and supported summary judgment motion, the nonmovant must present specific facts showing that summary judgment is not proper and may not rely merely on allegations in a pleading, as may the respondent to a Rule 12(b)(6) motion to dismiss for failure to state a claim. First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 289 (1968). When a court grants a Rule 12(c) motion for judgment on the pleadings, it decides that it is beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle the non-moving party to relief, even after accepting all allegations in the pleadings, and drawing all inferences in favor of the nonmovant. Oneida Indian Nation v. City of Sherrill, 337 F.3d 139, 152 (2d Cir. 2003).

When determining the tortious claims of the plaintiff, the district court will view the statute of limitations in accordance with the three year tort action. For statute of limitations purposes, 42 U.S.C. § 1983 actions are to be treated as personal injury actions. Wilson v. Garcia, 471 U.S. 261 (1985). In Owens v. Okure, 488 U.S. 235 (1989), the Court held that the appropriate limitations period for a 42 U.S.C. § 1983 complaint wherein plaintiff sued police officers for their alleged brutality in arresting him, the proper limitations period was the three year period for general personal injury.

42 U.S.C. § 1983 claims of constitutional violations are not barred by a one year and three month statute of limitations pursuant to General Municipal Law Sec. 50(h). State notices of claim actions don't govern 42 U.S.C. § 1983 actions, so that the failure to file a timely notice of claim against a governmental entity is not a bar to federal claims. Felder v. Casey, 487 U.S. 131 (1987).

Consequently, the tortious claims against the plaintiff that are founded upon constitutional violations are tort claims whose three year New York statute of limitations applies, and consequently survives plaintiff's filing of the Complaint on November 11, 2008.

## POINT I

## DEFENDANTS HAVE NOT PROVED THAT QUALIFIED IMMUNITY EXISTS AND DOES NOT DEFEAT PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR UNREASONABLE SEARCH AND SEIZURE / LACK OF PROBABLE CAUSE

Plaintiff has alleged a violation of fourth amendment violation of unreasonable search and seizure. Although the principle of qualified immunity protects defendant Detective DeCaro from liability under 42 U.S.C. § 1983, such a finding of qualified immunity is not automatic in a Rule 12(b)(6) motion

Upon a motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts supporting the claim of an improper motive in order to avoid summary judgment. Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995). In Mollica v. Volker, 229 F.3d 366 (2nd Cir. 2000), the circuit in determining whether automobile checkpoints were unconstitutional, reiterated the law on warrantless seizures and qualified immunity.

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. We have interpreted this standard to require three elements: (1) . . . [that] the right in question [be] defined with "reasonable specificity"; (2) [that] the

> decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) [that] under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Id. at 370 (citations omitted). Because Fourth Amendment standards governing arrests and searches are sufficiently established that a wrongful arrest is a violation of the plaintiff's rights, the application of qualified immunity boils down to whether the officer acted in an objectively reasonable manner. See Anderson v. Creighton, 483 U.S. 635 (1987).

In a Rule 12(b)(6) motion, although the ultimate burden of persuasion is upon the defendant official to prove qualified immunity (see Lee v. Sandberg, 136 F.3d 94 (2d Cir. 1997), the Supreme Court in Mitchell v. Forsyth, 472 U.S. 511 (1985) indicates that the plaintiff is expected to allege official action that violates clearly established federal law, and that unless the plaintiff's allegations state a claim of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Id at 526. Here, the complaint has successfully alleged official action that violates clearly established law with regard to the Fourth Amendment, and that "it is clearly established in common law that police cannot make a warrantless arrest unless there is probable cause, exigent circumstances/danger or other very specific exceptions, and that warrantless arrests are not justified for minor offenses (Complaint ¶ 26) and that such procedures violated the Constitution (Complaint ¶ 36). Arrest and imprisonment was caused . . . without any warrant or other legal process and without authority of the law and without any reasonable cause or belief that the plaintiff was in fact guilty of a crime. . . " (Complaint ¶ 16) should be taken as truthful.

In Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007), a *Bivens* action, the Second Circuit held that personal capacity claims subject to qualified immunity are not governed by a heightened pleading standard, but instead obliges the plaintiff to amplify a claim with some factual

allegations in order to render the claim plausible. Id. At 158. Here, the violation of plaintiff's rights through an illegal warrantless arrest has plausibility, through a perusal of the exhibits to the Answer. While Defendant Detective Decaro states that the plaintiff told him immediately before his arrest that plaintiff took and parked the car, and that is the reasons Defendant Detective Decaro put him handcuffs and brought him to the police station (Defendants' Ex. 2-L, p. 38), plaintiff states he said no such thing (Defendants' Ex 2-L, p. 66).

In summation, there is a factual dispute as to what actually occurred at the time of arrest. Such a dispute, it is respectfully submitted, leaves open the question of whether the warrantless arrest of plaintiff was reasonably objective (See Lee v. Sandberg, 136 F.3d 94 (2d Cir. 1997)) or whether there existed improper motive. In McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004), the Court held that qualified immunity may be raised on a Rule 12(b)(6) motion to dismiss, but the normal Rule 12(b)(6) standards apply, and plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense. Id. At 436. Although the moving papers attempt to show exhibits and 'facts' that would prove to this court that Det. DeCaro had probable cause to make a warrantless arrest of the plaintiff, such 'facts' consist of a supposed written confession by plaintiff, and statements by Det. DeCaro, and it is flippant and misleading to consider such a written confession and such statements 'facts,' in light that the prosecution of plaintiff was subject to a Huntley hearing, where the signed confession was suppressed (see Defendants' Exhibit 2-M).

It is respectfully brought to the Court's attention that the plaintiff's charges were dismissed, and that the issue of whether there was probable cause is a question of fact. In a case where a grand jury refused to indict the plaintiff, although this did not establish as a matter of

law whether the police officer lacked probable cause of arrest, it nevertheless was an issue of fact for a jury. Phillips v. Corbin, 132 F.3d 867 (2d Cir. 1997).

## POINT II

## PLAINTIFF HAS ADEQUATELY PLED MUNICIPAL LIABILITY

In order to hold a municipality liable under 42 U.S.C. § 1983 for the conduct of employees below the policymaking level, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. New York City Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991); see Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 389 (1989).

Although local government liability does not follow respondeat superior from unconstitutional conduct of lower level employees official policy or custom may be made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy. Monell, 436 U.S. 658 at 695-96 (1978). If a high ranking official of a local government body or a similar official in one of its departments declares or otherwise establishes a policy which, when executed by the official personally or by a subordinate, leads to a constitutional violation, the local government (as well as the official) may be liable under 42 U.S.C. § 1983 even in the absence of a formally declared policy by the local government itself. Id.

Whether the basis of plaintiff's sec 1983 municipal liability claim is an officially promulgated policy, the decision of an official with final policymaking authority, a custom or practice, or deliberately indifferent training, supervision or hiring, the plaintiff must demonstrate that enforcement of the policy or practice was closely related to the violation of the plaintiff's federally protected right. The requisite causation must have ordinary principles of causation applied, including superceding causes and normal foreseeable consequences, to supervisory and

municipal liability claims. Back v. Hastings-on-Hudson Union Free School District, 365 F.3d 107 (2d Cir. 2004). A plaintiff is required to allege both the existence of a policy or custom and a causal connection between that policy and the unconstitutional conduct. Perez v. City of New York, No. 97 CV 2915, 2002 U.S. Dist. LEXIS 4297, 2002 WL 398723, at *2 (E.D.N.Y. Mar. 14, 2002).

Although isolated instances of wrongdoing by municipal officers or employees do not constitute a custom (Pineda v. City of Houston, 291 F.3d 325 (5th Cir. 2002)), a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy. Sorlucco v. New York City Police Dep't, 971 F.2d 864 (2d Cir. 1992). The inference that such a policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti, 941 F.2d at 123; see Sorlucco v. New York City Police Department, 971 F.2d 864, 870-71 (2d Cir. 1992).

In Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1995), the plaintiff was attacked by "skinheads" during a protest rally, wherein it was alleged that the New York City police failed to protect plaintiff while he was being feloniously assaulted, defendant successfully dismissed plaintiff's 42 U.S.C. § 1983 action against the municipality through a Rule 12(b)(6) motion because, while Dwares attempted to plead the requisite policy or custom here by alleging that the City knowingly, recklessly, negligently failed to, and was deliberately indifferent to the need to provide adequate training, monitoring and supervision of the defendant police officers with respect to their obligation to protect citizens, the complaint did not allege any facts, other than the police officers' inaction in the instance complained of, to suggest that there existed such a custom or policy of failure to train.

On the other hand, Plaintiff's Complaint alleges multiple instances of misconduct on the part of the municipality and a pattern, custom or policy leading to such misconduct. The Complaint at ¶ 82 states that "a systematic pattern of conduct exists consisting of a large number of acts of violence, illegal arrests, illegal searches and seizures, intimidation, torture, assaults, batteries, and other illegal acts of the defendants, their agents, servants, and employees, and that the County and the Prosecutors have used these customs to their advantage to persecute the citizens of Nassau and that these illegal acts are actually encouraged." The complaint also alleges that "despite the existence of the "Patrol Guide", a regular and ongoing policy . . . of the Nassau Policy Department . . . [defendants] falsely arrested the plaintiff under color of state law, and continued thereafter not to provide the plaintiff necessary medical evaluation. Complaint ¶ 19.

Dzwonczyk V. Syracuse City Police Department, 2008 WL 5459147 (N.D.N.Y.) summarizes the pleading standard that must be followed to overcome a Rule 12(b )(6) motion to dismiss. In a fourth amendment Monell claim which regarding an alleged unlawful strip search, plaintiff's allegation that the police chief had been and still is responsible for the promulgation, and implementation of police procedures and practices among police officers of the Onondaga County Sheriff's Office were deemed sufficient to set forth such a claim.

> The Supreme Court has held that no heightened pleading standard should be applied to § 1983 actions alleging claims for municipal liability under Monell. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). The Court in Leatherman reiterated, in accordance with Conley v. Gibson, 355 U.S. 41 (1957) that under Rule 8, all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman, 507 U.S. at 168. The Second Circuit has evolved from its requirement that "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights[,]" Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987), to the post-Leatherman conclusion that "the court may not go be-yond

> FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment[,]" Phelps v. Kapnolas, 308 F.3d 180, 186-87 (2d Cir.2002) . . .
>
> Regarding Monell claims in particular, "[t]he pleading requirement for a § 1983 claim against a municipality will be met if a plaintiff alleges that 'a formal policy which is officially endorsed by the municipality' caused the plain-tiff's injuries." Perez v. Westchester County Dep't of Corrs., No. 05-Civ.-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007). Even where allegations in the complaint of the existence of an official policy are not buttressed by supporting facts, dismissal is not warranted as long as the defendant has "fair notice of what the plaintiff's claim is and the grounds upon which it rests [,]" Nesbitt v. County of Nassau, No. 05-CV-5513, 2006 WL 3511377, at *4 (E.D.N.Y. Dec.6, 2006). "It is up to the 'liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" Id.

Id. at *15 (source citations and footnotes omitted). Consequently, plaintiff has adequately pled municipal liability to withstand movant's Rule 12(b)(6) motion.

Plaintiff has also adequately pled municipal liability due to failure to train. The standard of local government liability for failure to train is deliberate indifference to rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Under Leatherman, under Fed. R. Civ. Pro. Rule 8, all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Dzwonczyk.. The Complaint is in accord with this enumerated standard. The Complaint states that the defendants failed to train (Complaint ¶ 35) and despite the training guides contained in the Police Patrol Guide, that defendants have shown deliberate indifference towards the plaintiff (Complaint ¶ 33) and that this represents gross indifference to the constitutional rights of the citizens of Nassau County (Complaint ¶ 34).

For these reasons, the Complaint has adequately pled municipal liability against defendant County of Nassau.

In addition, the plaintiff has adequately pled liability as against the six defendants who hold supervisory positions. The Complaint alleges at ¶ 32 that the Police Commissioner has a duty to train, discipline and supervise officers to protect the constitutional rights of the citizens, and that they failed to train (Complaint ¶ 35) and despite the training guides contained in the Police Patrol Guide, that defendants have shown deliberate indifference towards the plaintiff (Complaint ¶ 33) and that this represents gross indifference to the constitutional rights of the citizens of Nassau County (Complaint ¶ 34). Although the movant states that such wholly conclusory allegations are insufficient to state a claim against the six high-ranking officers, it is respectfully submitted that this standard applies to a summary judgment motion, and not a Rule 12(b)(6) motion. See Dzwonczyk..

**POINT III**

**PLAINTIFF HAS ADEQUATELY PLED PROSECUTORIAL MISCONDUCT**

Although state prosecutors are entitled to absolute immunity for that conduct intimately associated with the judicial phase of the criminal process (Imbler v. Pachtman, 424 U.S. 409, 430 (1976)), the prosecutor is not be protected by absolute immunity for conduct in rendering legal advice to police officers regarding the use of hypnosis in their investigation of the plaintiff and existence of probable cause to arrest plaintiff based on the supposed results of the hypnosis, as advising the police in the investigative phase of the criminal process is not so intimately associated with the judicial phase of the criminal process that it deserves absolute immunity protection. Burns v. Reed, 111 S.Ct. 1934 at 1944 (1991). When a prosecutor fabricated evidence in order to create probable cause for the purpose of recommending the arrest of the plaintiff, this action was engaging not as an advocate but as an investigator searching for clues

and was protected only by qualified immunity, the same qualified immunity as police officers engaged in the same conduct. See Buckley v. Fitzsimons, 509 U.S. 259 (1993).

A claim that a defendant prosecutor directed a court officer to arrest plaintiff without a warrant and without probable cause was possibly unprotected by absolute immunity because it suggested that defendant may have participated in executing the warrant. Day v. Morgenthau, 909 F.2d 75 (1990). Similaraly, a prosecutor's prelitigation conduct in the supervision and interaction with law enforcement agencies in acquiring evidence which might be used in a prosecution was protected only by qualified immunity. Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987).

In accordance with Leatherman, 507 U.S. 163, plaintiff has adequately pled that defendants caused plaintiff to be arrested without probable cause, and that Defendant DA Rice was involved in an investigation into stolen auto cases and that she approved of an fully or in part controlled the activities of the officers who acted as servants to their superiors (Complaint ¶ 46-48), and facts supporting or corroborating such an allegation are unnecessary to defeat a Rule 12(b)(6) motion to dismiss on the pleadings.

## POINT IV

## PLAINTIFF HAS ADEQUATELY PLED A CRUEL AND UNUSUAL PUNISHMENT CLAIM

Because the state has deprived prisoners of their physical liberty and the means to protect themselves, prison officials have an Eighth Amendment obligation to provide inmates with the necessities of life – adequate food, clothing, shelter and medical care and must take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994).

In Cuoco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000), the court held that the Eighth Amendment deliberate indifference standard governs detainee medical treatment claims.

Conditions of an inmate's confinement violate the Eighth Amendment only if they rise to the level of a serious deprivation (the objective prong) and result from the official's deliberate indifference (the subjective prong). Wilson v. Seiter, 501 U.S. 294 (1991). Because plaintiff's allegations must contain facts that may defeat a Rule 12(b)(6) motion, the allegation that "plaintiff is a disabled person, and was routinely taking various medications for that reason" (Complaint para 17) must be taken as true. See Scheuer v. Rhodes, 416 U.S. at 236. Furthermore, the facts concerning defendants' subjective knowledge of defendant's medical condition cannot be proved merely by looking at the Defendants' Exhibit 2-G. The court cannot determine as fact that plaintiff either requested or did not request medication while he was in extended custody, thus putting defendants on notice of his medical condition, because there has been no discovery. Because this motion is a Rule 12(b)(6) motion, the allegation that plaintiff made many urgent pleas for his necessary medication (as stated in Complaint ¶18) must be taken as true.

It is respectfully submitted that because Plaintiff suffered while in custody due to his medical condition, and that he suffered a serious deprivation as a result of the official's deliberate indifference, he has made out an Eighth Amendment claim under 42 U.S.C. § 1983 for both a medical deprivation claim and a conditions of confinement claim.

Finally, in Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001), the Court held that the Sandin v. Conner rule (515 U.S. 472 (1995)), does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardship to state deprivation of a liberty interest.

## POINT V

## PLAINTIFF HAS ADEQUATELY PLED A CLAIM OF MALICIOUS PROSECUTION

Under Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995), to make out a Fourth Amendment claim, the plaintiff must show that there was (1) a deprivation of liberty (2) resulting from a governmental seizure (3) in the form of legal process (4) without probable cause or otherwise unreasonable and (5) termination of the criminal proceeding in favor or the accused. The allegations contained in the Complaint ¶ 45 must be taken as true. See Scheuer v. Rhodes, 416 U.S. at 236. Plaintiff's alleges that "said arrest and imprisonment was caused . . . without any warrant or other legal process and without authority of the law and without any reasonable cause or belief that the plaintiff was in fact guilty of a crime. . . " Complaint ¶ 16.

Plaintiff has alleged that he was arrested without probable cause. That Defendant Det. DeCaro may not be protected through qualified immunity is discussed above in Point I. Finally, it is flippant for the defendants to claim that there was no favorable termination of the criminal proceeding in favor of the accused, and wrongheaded to suppose that only an acquittal by a jury of plaintiff's peers is a favorable termination. As shown in Defendants' Exhibit 2-M, because plaintiff's confession was excluded by Hon. William O'Brien upon a Huntley hearing (People v. Huntley, *255* N.Y.S. 2d 838 (1965)), the People could not possibly have successfully prosecuted plaintiff; it is respectfully submitted that the People had little more than the accusations made by the owner of Euro Autos, and possible testimony by Det. DeCaro that plaintiff could possibly have made a statement about the allegedly stolen automobile against plaintiff's self-interest (such statement being vociferously refuted by plaintiff; see Defendants' Exhibit 2-L, p. 64).

Consequently, Plaintiff has adequately pled a malicious prosecution claim.

## POINT VI

## PLAINTIFF HAS ADEQUATELY PLED A 42 U.S.C. § 1985 CLAIM

Plaintiff alleges (Complaint ¶ 86) that defendants conspired to deprive plaintiff of equal protection of the laws. Although under Mian v. Donaldson, 7 F.3d 1085 (2d Cir. 1993) states that such a conspiracy is actionable under 42 U.S.C. § 1985 only if it involves a discriminatory animus based on an invidious classification, plaintiff has alleged that he is a disabled person under the definition of the Americans with Disabilities Act (Complaint ¶ 2) and that he suffered physical and mental problems and was traumatized because of his lack of medication while in extended custody (Complaint ¶ 73).

Although the Supreme Court in Bray v. Alexandria Women's Health Clinic, 113 S.Ct. 753 (1993) did not decide whether Sec. 1985 may be used for class-base claims other than race, a number of lower federal court decisions have suggested that the disabled may be such a class of persons. In Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997), the Third Circuit held the mentally retarded to be a protected class in Sec. 1985(3) actions, the court finding that the Second Circuit found the handicapped to compose a protected class (citing People v. Abrams v. 11 Cornwell Co., 695 F.2d 34 (2d Cir. 1982, vacated in part on other grounds, 718 F.2d 22 (2d Cir. 1983)).

It is respectfully submitted that Defendant Det. DeCaro knew of plaintiff's maladies and his disability because he had discussions with the owner of Euro Car Inc. The owner of Euro Car Inc. had known plaintiff for three years (see Defendants' Exhibit 2-L, p. 9), and it is possible that Det. DeCaro planned to take advantage of plaintiff's weaknesses in order to gain a confession to stealing the automobile.

## CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests that the Court deny the motion to dismiss the complaint.

Dated: August 12th, 2009

Respectfully submitted,

Jacqueline Hollander, Esq.
*Attorney for the Plaintiff*
Law Offices of Jacqueline Hollander, PC
708 Third Avenue, 6th Floor
New York, New York 10017
Phone: (212) 209-3926
Fax: (877) 573-7219

TO:
Ralph Reissman, Esq.
*Attorneys for the Defendants*
County of Nassau
Office of the County Attorney
One West Street
Mineola, New York 11501-4820
Tel: (516) 571-3046
Fax: (516)571-3058

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above MEMORANDUM OF LAW IN OPPOSITION has been forwarded to all counsel of records through the Court's electronic notification system this 12th day of August, 2009.

JACQUELINE HOLLANDER